UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT BOWLING GREEN


DONNA LANGFORD
    Plaintiff

v.                                                                                                                  No. 1:09CV-00160-J

MICHAEL ASTRUE
    Commissioner of Social Security
    Defendant


**MAGISTRATE JUDGE'S REPORT
and RECOMMENDATION**

This matter is before the court upon the plaintiff's complaint seeking judicial review of the final decision of the Commissioner pursuant to 42 U.S.C. § 405(g). The plaintiff is represented by M. Gail Wilson. The fact and law summaries of the plaintiff and the defendant are at Docket Entry Nos. 12 and 13, respectively. This matter has been referred to the undersigned magistrate judge for report and recommendation pursuant to 28 U.S.C. § 636.

The final decision of the Commissioner was rendered on March 27, 2009, by administrative law judge (ALJ) Ronald Kayser. In support of his decision denying Title II and Title XVI benefits, Judge Kayser entered the following numbered findings:

    1. The claimant meets the insured status requirements of the Social Security Act through March 31, 2011.

    2. The claimant has not engaged in substantial gainful activity since August 30, 2006, the alleged onset date (20 CFR 404.1571 et seq., and 416.971 et seq.).

    3. The claimant has the following severe impairments: history of T11-T12 discectomy; degenerative disc disease in the cervical and thoracic spine; mood disorder; personality disorder; substance abuse (20 CFR 404.1521 et seq. and 416.921 et seq.).

     4. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1525, 404.1526, 416.925 and 416.926).

     5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform restricted range of light work. She can lift and carry 20 pounds occasionally and 10 pounds frequently; stand/walk and sit for 6 hours each in an 8-hour workday. She is limited to no more than occasional climbing of ropes, ladders and scaffolds; limited exposure to vibration. She has slight limitations but generally functions well with regard to understanding, remembering and carrying out simple instructions, and to make adjustments on simple work-related decisions. She has slight limitations but still functions satisfactorily with regard to understanding, remembering and carrying out complex instructions, and interacting appropriately with supervisors and co-workers. She has seriously limited ability to make judgment on complex work-related decisions, interact appropriately with the public and respond appropriately to usual work situations and to changes in a routine work setting (20 CFR 404.1567(b) and 416.967(b)).

     6. The claimant is unable to perform any past relevant work (20 CFR 404.1565 and 416.965).

     7. The claimant was born on January 21, 1961, and was 45 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date (20 CFR 404.1563 and 416.963).

     8. The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564 and 416.964).

     9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

     10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569, 404.1569a, 416.969, and 416.969a).

     11. The claimant has not been under a disability, as defined in the Social Security Act, from August 30, 2006, through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

(Administrative Record (AR), pp. 10-15).

## Governing Legal Standards

1. The court has jurisdiction to examine the record that was before the Commissioner on the date of the Commissioner's final decision and to enter a judgment affirming, modifying, or reversing that decision. 42 U.S.C. § 405(g), sentence four. In exercising its "sentence four" jurisdiction, the court is limited to determining whether the Commissioner's controlling findings are supported by substantial evidence and whether the Commissioner employed the proper legal standards in reaching his decision. *Richardson v. Perales*, 402 U.S. 389 (1971). Substantial evidence is more than a scintilla of evidence but less than a preponderance and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Kirk v. Secretary*, 667 F.2d 524 (6th Cir., 1981). It has been described as a sufficient amount of evidence "to justify, if the trial were to a jury, a refusal to direct a verdict." *Sias v. Secretary*, 861 F.2d 475, 480 n. 1 (6th Cir., 1988). In determining whether the Commissioner's findings are supported by substantial evidence, the court must examine the evidence in the record taken as a whole and must take into account whatever in the record fairly detracts from its weight. *Wyatt v. Secretary*, 974 F.2d 680 (6th Cir., 1992). However:

> The substantial-evidence standard allows considerable latitude to administration decision makers. It presupposes that there is a zone of choice within which the decision makers can go either way, without interferences by the courts. An administrative decision is not subject to reversal merely because substantial evidence would have supported an opposite decision.

*Mullen v. Secretary*, 800 F.2d 535, 545 (6th Cir., 1986).

When conducting substantial evidence review, the court is restricted to a consideration of the evidence that was before the Commissioner on the date of the final decision. When the Appeals Council declines to review the ALJ's decision and render a new decision, the ALJ's decision becomes the Commissioner's final decision. *Cotton v. Secretary*, 2 F.3d 692 (6th Cir., 1993).

2. To be entitled to disability insurance benefits (DIB), a claimant must be under the age of 65 years, must meet the insured status requirements of Title II of the Social Security Act, and must be under a disability as defined by the Act. To qualify for supplemental security income (SSI) benefits, a claimant must file a Title XVI application, must have insufficient earnings and other financial resources, and must be under a disability as defined by the Act. The determination of disability is essentially the same for Title II and Title XVI purposes.

3. Disability determination is a five-step sequential evaluation process, to-wit:

**STEP #1** The claimant must not be engaged in substantial gainful activity.

**STEP #2** The alleged disabling impairment must be "severe." A "severe" impairment is one that "significantly limits" a claimant's ability to do "basic work activities" that are "necessary to do most jobs" such as walking, standing, sitting, lifting, seeing, hearing, and speaking. 20 C.F.R. §§ 404.1521 and 416.921. Only a "slight abnormality which has such a minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education and work experience" is "nonsevere." *Farris v. Secretary*, 773 F.2d 85, 89-90 (6th Cir., 1985). Any physical or mental impairment that has more than a de minimis, or significant, effect on the claimant's ability to work is "severe," and the sequential evaluation should proceed to Step #3. In addition, the "severe" impairment must satisfy the

so-called duration requirement, to-wit, the impairment must be expected to result in death or "must have lasted or must be expected to last for a continuous period of at least 12 months." 20 C.F.R. §§ 404.1509 and 416.909.

**STEP #3** If the claimant has a medical condition that meets or exceeds the criteria for an impairment defined in Appendix 1 of 20 C.F.R. Part 404, Subpart P of the regulations ("the Listing"), a conclusive presumption attaches that the claimant is disabled.

**STEP #4** The claimant must not be able to perform his past relevant work either as he actually performed it or as it generally performed in the national economy.

**STEP #5** If the claimant makes a prima facie showing that he cannot perform his past relevant work, the burden of going forward with evidence shifts to the Commissioner to show that a significant number of jobs exist in the national economy that the claimant can perform. *Born v. Secretary*, 923 F.2d 1168 (6th Cir., 1990). The focus of judicial review in Step #5 cases is typically whether the controlling hypothetical posed to the vocational expert reflected all vocationally significant physical and mental limitations actually suffered by the claimant. *Varley v. Secretary*, 820 F.2d 777 (6th Cir., 1987).

**Medical and procedural history**

The plaintiff alleges disability due to degenerative disc disease (DDD) at the cervical, thoracic, and lumbar levels, back and neck pain, and non-intellectual mental impairments. We shall preface our consideration of the plaintiff's specific contentions upon judicial review with the following chronological summary of the medical and procedural history in this case:

1. In November of 2006, x-rays revealed the presence of "considerable degenerative disease of C6 and C7 associated with marked narrowing of the joint space as well as posterior spurring" and some DDD of the lower lumbar spine "however vertebral body height alignment are intact" (AR, p. 251).

2. In March of 2007, the non-examining state agency program physician completed the standard physical assessment form (AR, pp. 270-277). The physical limitations stated in the ALJ's residual functional capacity (RFC) Finding No. 5 are identical to those found by the state agency physician. The program physician based his findings upon a primary diagnosis of "DDD C6-C7 and L2-S1" (AR, p. 270).

3. In April of 2007, an MRI revealed, among other things, at the T11-T12 level, "left paracentral small disc protrusion [that] appears to result in lateral recess stenosis" (AR, p. 324).

4. In August of 2007, upon reconsideration review, another non-examining state agency physician adopted the prior physician's findings. However, the new physician indicated that, in addition to the prior diagnoses, his findings took into account diagnoses of "HNP [herniated nucleus pulposus] at T11-12 [and] DDD at L4-5, L5-S1" (AR, p. 297).

5. In October of 2007, the plaintiff underwent discectomy at the T11-12 level (AR, p. 378).

6. In March of 2008, MRI's confirmed the presence of DDD at the T11-T12, L4-L5, and L5-S1 levels (AR, pp. 330-333). However, it was observed that "post surgical changes T11/T12 [exist] without evidence for recurrent disc bulging or protrusion" (AR, p. 332).

7. In July of 2008, the ALJ continued the administrative hearing for the purpose of obtaining consultative evaluations.

8. In August of 2008, the plaintiff was examined at the request of the Commissioner by Gary Maryman, Psy.D. Dr. Maryman's narrative report is at AR, pp. 441-447, and his completion of the standard mental assessment form is at AR, pp. 448-450. The mental limitations stated in the ALJ's RFC Finding No. 5 are identical to those found by Dr. Maryman.

9. In August of 2008, the plaintiff was examined at the request of the Commissioner by Mark Burns, M.D. Dr. Burns' narrative report is at AR, pp. 451-456, and his completion of the standard physical assessment form is at AR, pp. 457-462. Dr. Burns opined, in part, as follows (AR, p. 453):

> Ms. Langford had x-rays performed with the following results: ... Normal cervical spine film. ... Normal lumbar spine film. ... Normal thoracic spine film.

In completing the form, Dr. Burns found that the plaintiff has <u>no</u> physical limitation of any sort. For example, the plaintiff can allegedly lift and carry 51 to 100 pounds "continuously" during the work day; she can sit, stand, and walk "without interruption" for eight hours a day; she can "continuously" use her hands to reach, handle, finger, feel, push, and pull; she can continuously operate foot controls; she can continuously engage in <u>every</u> postural activity; she can tolerate a continuous exposure to <u>every</u> environmental challenge, including unprotected heights, moving mechanical parts, operating a motor vehicle, and vibrations; she can tolerate a continuous exposure to dust, odors, fumes and pulmonary irritants, "extreme" cold, "extreme" heat, and "very loud" noises, including "jackhammers."

10. In October of 2008, a cervical MRI revealed, among other things, "multilevel discogenic degenerative changes most notable at C6-C7" (AR, p. 490).

7

**Discussion**

This case was denied at the fifth and final step of the sequential evaluation process based upon testimony from a vocational expert (VE). The VE testified that an individual with the physical and mental limitations stated in Finding No. 5 would retain the ability to perform a significant number of "light" jobs in the national economy (AR, pp. 26-27).

The plaintiff's primary contention upon judicial review is that the ALJ "failed to take into consideration the limitations and restrictions that Ms. Langford had as a result of her neck and back condition [and] improperly relied on a report of Dr. Mark Burns." According to the plaintiff, she is "clearly restricted and limited to a lesser functional capacity than that assessed by the ALJ." Stated somewhat differently, the plaintiff's central contention is that the ALJ's physical RFC Finding No. 5 is not supported by substantial evidence because it is unsupported by any medical opinion that contemplated her impairments as a whole.

At the outset of the hearing in November of 2008, counsel objected to Dr. Burns' assessment on the following grounds: 1) Dr. Burns' finding of <u>no</u> physical limitation is inherently suspect; 2) a finding of a "normal" thoracic spine is inconsistent with the plaintiff's history of discectomy at the T11-T12 level; 3) Dr. Burns did not attach a copy of the x-ray reports that allegedly supported his finding of complete "normality" of the cervical, lumbar, and thoracic spine; and 4) there is no indication that Dr. Burns was aware of the fairly extensive x-ray and MRI evidence showing the presence of DDD at the cervical, thoracic, and lumbar levels. The ALJ stated that he would try to obtain the x-ray reports mentioned by Dr. Burns (AR, p. 20). However, the reports are not in the administrative record, and they were not mentioned by the ALJ in his written decision.

The magistrate judge agrees with the plaintiff that Dr. Burns' opinion of no physical restriction whatsoever is insubstantial and suspect on its face. However, the undersigned cannot agree with the plaintiff that the limitations found by the ALJ were, in any significant sense, based upon acceptance of Dr. Burns' assessment. The ALJ did not find that the plaintiff is physically unrestricted. As indicated above, the ALJ's RFC Finding No. 5 corresponds <u>exactly</u> to the limitations assigned by the state agency program physicians.

Furthermore, contrary to the plaintiff's assertion, it is not "clear," from a medical perspective, that an individual suffering from DDD at the cervical, thoracic, and lumbar levels, lumbar stenosis, etc., as indicated by the most recent x-rays and MRI's, would necessarily be more limited than the ALJ and the state agency physicians found. As indicated above, the state agency physicians expressly took into account limitations resulting from diagnoses of DDD at the C6-C7, L4-L5, and L5-S1 levels as well as active (pre-surgical) herniated nuclear propulsus (HNP) at the T11-T12 level (AR, pp. 270 and 297). Arguably, the state agency physicians <u>over</u>-stated the plaintiff's present limitations because the state agency findings were given prior to reparation of the plaintiff's thoracic HNP.

Admittedly, all of the x-ray and MRI evidence was not available at the time the state agency physicians gave their opinions. However, the plaintiff has failed to show that the new evidence requires a finding of additional limitations. On the contrary, the new evidence appears only to further establish the existence of impairments that the state agency physicians acknowledged, i.e., DDD at the cervical, thoracic, and lumbar levels. The magistrate judge concludes that the Finding No. 5 is supported by adequate probative medical evidence.

9

The foregoing conclusion is buttressed by the fact that none of the plaintiff's treating physicians assigned any specific physical restrictions. Perhaps the opinions of the state agency physicians would have been insubstantial in this case <u>if</u> the plaintiff's treating physicians had opined greater limitations in light of the more recent x-ray and MRI findings. But that is not the case. Here, the <u>only</u> medical sources who attempted to opine specific restrictions based upon a consideration of the plaintiff's DDD were the state agency physicians. As lay individuals, neither the plaintiff, the ALJ, nor this court is in a position to interpret raw clinical findings in functional terms. The plaintiff's argument that she is "clearly" more limited than the ALJ found in light of the most recent radiographic evidence is little more than an unsupported assertion.

The plaintiff's final contention is that the ALJ erred in evaluating her mental impairments. The plaintiff suffers from unprocessed grief and depression in relation to the death of her husband and sister and because she feels "trapped" in the role of care-giver to her ailing father. From about 2000 until 2006, she used cocaine (AR, p. 22). She received treatment at the Adanta Mental Health Clinic, which is located in Columbia, Kentucky, from Brenda Huckaby, who is a licensed clinical social worker. Apparently at the plaintiff's request, Ms. Huckaby completed the "residual functional capacity questionnaire for psychiatric disorders," finding "marked" and "severe" limitations in several functional areas (AR, pp. 466-471). The VE testified that acceptance of Ms. Huckaby's findings would render the plaintiff disabled (AR, pp. 27-28). As indicated above, the ALJ's mental RFC Finding No. 5 reflects acceptance of the findings of Dr. Maryman at AR, pp. 448-450. The plaintiff argues that the ALJ should have adopted Ms. Huckaby's assessment rather than Dr. Maryman's.

The ALJ rejected Ms. Huckaby's opinions to the extent they required a finding of disability because they were found to be "contradicted by other evidence and inconsistent with the evidence as a whole" (AR, p. 14). Licensed clinical social workers are not considered "acceptable medical sources" as defined by 20 C.F.R. §§ 404.1513(a) and 416.913(a), whose opinions may be given controlling weight. See Social Security Ruling (SSR) 06-3p. Rather, they are "other sources," whose opinions are "important and should be evaluated on key issues such as impairment severity and functional effects, along with other relevant evidence in the file." Id. The magistrate judge concludes that the plaintiff has failed to show that the ALJ failed to "evaluate" Ms. Huckaby's opinion or that he acted outside his province in choosing to credit some of Dr. Maryman's opinions in preference to Ms. Huckaby's disabling opinions.

**RECOMMENDATION**

The magistrate judge RECOMMENDS that the final decision of the Commissioner be AFFIRMED and that the plaintiff's complaint be DISMISSED.

**NOTICE**

Pursuant to 28 U.S.C. § 636(b)(1), as amended, any party shall have a period of fourteen (14) days, excluding intervening Saturdays, Sundays, and/or legal holidays pursuant to Fed.R.Civ.P. 6(a), from the date of notice of electronic filing within which to file written objections to the foregoing report with the Clerk of the Court. Further and pursuant to Fed.R.Civ.P. 72(b), any party may file a response to objections filed by another party within fourteen (14) days, excluding Saturdays, Sundays, and/or intervening legal holidays, after being served with a copy of said objections. A period of three days shall be added to each fourteen (14) day period above pursuant to Fed.R.Civ.P. 6(d), for a total of seventeen (17) working days.

The court shall not conduct a <u>de novo</u> review of objections that are general, conclusory, or merely adopt previous pleadings. The original objections shall be sent to the Clerk of Court either electronically or by mail. A copy of any objections and response thereto shall be served on the undersigned at Suite 330, 501 Broadway, Paducah, Kentucky, 42001 or via e-mail to w_david_king@kywd.uscourts.gov. Failure of a party to file timely objections shall constitute a waiver of the right to appeal by that party. *Thomas v. Arn*, 474 U.S. 140 (1985).